UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JESSIE MILTON,

                Plaintiff,

-vs-                            Case No.  5:07-cv-432-Oc-10PRL

KATHRYN TURNER, in her Individual
Capacity, BLANCA CAMPOS, in her
Individual Capacity, R. MOORE,
Sergeant, in his Individual Capacity, and
T. NEAL, in his Individual Capacity,

                Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Jessie Milton is a state prisoner at the Sumter Correctional Institution in Bushnell, Florida.  On October 26, 2007, Milton filed a 42 U.S.C. § 1983 prisoner civil rights complaint against four Florida Department of Corrections officers in their individual capacities, asserting that they were deliberately indifferent to a serious medical condition in violation of his Eighth Amendment right to be free from cruel and unusual punishment (Doc. 1).

On April 14, 2010, the Court granted the Defendants' motions to dismiss, finding that Milton failed to sufficiently allege a claim for deliberate indifference (Doc. 72). Judgment was entered the next day (Doc. 73).  Milton appealed (Doc. 74), and on August 19, 2011, the Court of Appeals affirmed the dismissal of Milton's claims against

Defendants Turner and Campos (Doc. 88).[1]  However, the Court of Appeals found that Milton had alleged a plausible claim against Defendants Moore and Neal for interference with the treatment of Milton's infected hallux (big toe), and a plausible claim against Defendant Neal for delayed treatment of his hallux (Id.).  The Court of Appeals vacated and remanded these two claims for further proceedings (Id.).  The mandate issued on September 22, 2011 (Id.).

In accordance with the Court of Appeals' mandate, on November 23, 2011 this Court entered a case management and scheduling order setting an abbreviated discovery schedule and deadline for filing dispositive motions (Doc. 90).  On April 20, 2012, Defendants Moore and Neal filed their motion for summary judgment (Doc. 105), to which Milton has filed a response in opposition (Doc. 109).[2]  The case is therefore fully briefed and ripe for disposition.

Upon due consideration, and for the reasons discussed below, the Court concludes that the motion for summary judgment is due to be granted in its entirety.

———————————————

[1]The Court of Appeals also affirmed the dismissal of counts V through VIII of Milton's complaint, which pleaded separate counts for damages and addressed potential affirmative defenses.

[2]On April 23, 2012, the Clerk sent Milton a "Summary Judgment Notice" notifying him that he had 21 days to respond to the Defendants' motion for summary judgment, advising Milton that he could not rely solely on the allegations of his complaint, and further advising him that "all material facts asserted by the movant in the motion will be considered to be admitted by you unless controverted by proper evidentiary materials (counter-affidavits, depositions, exhibits, etc.) filed by you."  (Doc. 106).

**Undisputed Material Facts**

Jessie Milton has been an inmate in the State of Florida prison system since 1999.  On December 18, 2006, he was transferred from the Everglades Correctional Institute to the Sumter Correctional Institute and completed the required orientation and processing.   Milton is an insulin dependent diabetic who reports to the Sumter Correctional facility's medical department twice a day for insulin injections.  Defendant R. Moore is a Sergeant at the Sumter Correctional Institute.  Defendant T. Neal is a corrections officer at the same facility, and the insides grounds lawn mower squad supervisor.

Milton claims that for the three years prior to his transfer to Sumter Correctional, he worked as a houseman performing indoor cleaning duties.  He was initially assigned to work as a houseman when he transferred to Sumter Correctional.  On January 11, 2007, Milton was assigned to inside grounds, which includes duties outdoors such as mowing grass.  On January 15, 2007, Milton filed an Inmate Request form with his classification officer and requested that his work assignment be changed back to houseman.   His classification officer responded the following day that "Work assignments are not a privilege, they are assigned according to the needs of the institution. You are listed by the computer as being able to work inside grounds." (Doc. 1, Ex. A).  Until January 26, 2007, he was assigned to the "Weekend Warrior Squad" and picked up paper for 20-30 minutes on the weekends.

On February 2, 2007, Milton began working on the mower squad.  He worked every other day from 8:30 a.m. to 11:00 a.m. for a total of 10 days a month.  Milton states that he repeatedly spoke to both Moore and Neal about his concerns working on the mower squad, and specifically, being forced to work with his "sugar level dropping."   According to Milton, neither Moore or Neal would change Milton's work assignment.  Instead, Moore told Milton to "go to sick call and get a pass."

On February 13, 2007, Milton did go to sick call and complained about "his problem of diabetes, and new developing problems of skin scraping off [his] inner thighs, [and] sores on [his] foot as a result of working the mower squad." (Doc. 1, ¶ 46).  Milton was treated by a nurse who observed some discoloration on the soles of his feet (Doc. 105, Ex. 1).  The nurse gave Milton antifungal foot powder, antibiotic ointment, and ibuprofen, and instructed Milton to declare a medical emergency if his blood glucose drops.  The medical records from this sick call visit state that Milton had no signs or symptoms of infection, but that Milton had a "foot sole irritation."  Id.

Milton claims that the nurse also instructed him to immediately go to Moore and Neal and ask them to issue him a pair of work boots, however there is no mention of prescribing work boots in any of the medical records from that visit.  The nurse also told Milton to instruct Moore and Neal to call the medical department if they gave Milton any problems.  Milton contends that he relayed the nurse's instructions to Moore and Neal, but that they both refused to issue work boots to Milton, and forced him to continue working on the mower squad in his state issued cloth shoes.

At some point after February 13, 2007, Milton developed an infection of his hallux, or big toe.  On February 20, 2007, prior to starting work for the day, Milton told Neal that he "was in much pain, his toe had swollen up with pus," and he "could barely walk on it."  Milton did not, however, request any medical treatment.  Rather it appears that he made these complaints in an attempt to get out of work without treatment. (Doc. 1, ¶¶ 54-55; Doc. 109, pp. 38-41, ¶¶ 9-10).  Neal ignored Milton's complaints, stated that if a problem arose "medical" would come and get Milton, and ordered him to start work.  Milton contends that while working on the mower squad he incurred an additional injury, and, as a result, he could not keep up with the production level of the other inmates.  Neal yelled at Milton to speed up.  At this point Milton requested treatment and declared a medical emergency, but Neal refused to give Milton any medical attention and instead forced him to work for another 20-30 minutes until his shift was completed.[3]

---

[3]Neal challenges all of the allegations against him.  He has filed an affidavit (Doc. 105, Ex. 3), in which he avers that he never denied Milton any medical care, and did not have any authority to issue work boots, so he could not have denied Milton's request.  In fact, Neal claims that he does not remember supervising Milton at all.

Moore has also filed an affidavit contesting the allegations against him (Doc. 105, Ex. 4). Moore remembers Milton complaining about working on the mower squad, but Moore avers that he would not transfer him off the mower squad without a medical pass.  Moore contends that Milton never had any medical restrictions which would prevent him from working on the mower squad, other than the ten day no work pass he received from the medical department on February 22nd.  Moore further contends that Milton was advised that the manufacturer of the mower only recommended that a mower operator wear closed toe shoes – work boots were not required.

Once he completed his work assignment, Milton went to Moore and complained about Neal. Moore told Milton to go to sick call. However, Milton then claims that Moore told him to report to the recreation yard instead. Fearful of being disciplined by Moore, Milton complied with this new order, and went to the recreation yard.[4]

Eventually Milton did go to the medical wing later that day. The nurse gave him aspirin and told him to return the next morning (February 21, 2007) for sick call. Milton did not report to sick call on the 21st. He decided to wait to report until his next scheduled work day (February 22, 2007), in the hope that the medical department would excuse him from working his shift on the mower squad. However, he did report for his daily insulin shots. During his visit to the insulin clinic on the 21st, he asked the nurse for some ibuprofin because he was in pain. The nurse gave him the medication and told him to report to sick call.

On February 22, 2007, Milton reported to sick call and was seen by a nurse, who referred him to a staff physician. Milton was diagnosed with an infected hallux. He was prescribed antibiotics, anesthetic ointments, and given a ten day no work pass. At the conclusion of the ten day no work period, Milton was placed back on the mower squad. He was eventually transferred to the Weekend Warrior squad.

---

[4]Milton has submitted the affidavits of two inmates, Marvin Walker and John Truitt, who witnessed Milton complaining to Moore and Neal on February 20, 2007, and also witnessed Moore and Neal ignoring Milton's complaints and directing Milton to go to sick call. (Doc. 109, Ex. A). Milton has also submitted the affidavits of two other inmates, Lester Walker and Anthony Smith, both of whom worked with Milton on the mower squad and observed the events of February 20, 2007, including Neals' refusal to allow Milton to stop working (Doc. 109, Ex. C).

Milton filed an Informal Grievance on February 27, 2007, which complained of Moore's and Neal's treatment of Milton and his infected hallux.  On March 20, 2007, Milton filed an Inmate Request with the Warden, complaining that he had never received a response to his February 27th Grievance.  Milton also filed a second Informal Grievance restating his complaints against Moore and Neal on March 20, 2007.  Milton contends that no one at Sumter Correctional ever responded to his Grievances.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248, 106 S. Ct. at 2510.

## Discussion

As narrowed by the Court of Appeals, this case presents two claims under 42 U.S.C. § 1983:  (1) a claim that Defendants Moore and Neal interfered with the treatment of Milton's infected hallux; and (2) a claim that Defendant Neal delayed treatment of Milton's infected hallux.  Because Milton was a state prisoner at the time of the events in question, both claims assert violations of his Eighth Amendment right to be protected from a state officer's deliberate indifference to a serious medical condition.  See Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976). Such deliberate indifference includes "indifference . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Erickson v. Pardus, 551 U.S. 89, 90, 127 S. Ct. 2197, 2198 (2007) (quoting Estelle, 429 U.S. at 104-05, 98 S. Ct. at 291).

"To prevail on a deliberate indifference to serious medical need claim, plaintiffs must show:  (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).  See also Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010).  "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."  Farow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  The plaintiff must first set forth evidence of an objectively serious medical need. Id. (citing Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).  Then, the plaintiff must prove that the prison official acted with deliberate indifference to that need.  Id.

## I.    Serious Medical Need

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow, 320 F.3d at 1243 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (quoting marks and citation omitted).  The medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (alteration in original) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, ___ (1994)).

In this case, the record evidence is undisputed that no physician mandated any treatment of Milton's hallux until February 22, 2007 – the date that his infection was diagnosed. Until that date, Milton was not seen by a physician. To be sure, on February 13, 2007, a nurse noted discoloration on his feet and prescribed antifungal powder.[5] However, the nurse specifically noted that Milton did not exhibit any signs or symptoms of infection, and did not mandate any further treatment. He was also not instructed to cease working on the mower squad at that time. Therefore, this portion of the deliberate indifference analysis is limited to the determination of whether prior to February 22, 2007, there is any evidence establishing, or creating a genuine issue of material fact, that the issues with Milton's hallux were so obvious that a lay person would have easily recognized the need for medical attention.

Taking the facts in the light most favorable to Milton, the Court finds that material issues of fact remain in dispute as to this prong of the deliberate indifference test. Milton claims that he repeatedly told both Moore and Neal that he was having problems with his foot, that he was concerned about complications due to his diabetes, and that on February 20, 2007 it was almost too painful for him to walk. He has also submitted the affidavits of four inmates, each of whom aver that Milton complained to both Milton and Neal about his foot. In addition, Milton claims that his hallux was so painful that he could not keep up with the other inmates on the mower squad, and that Neal was

_____

[5]The record evidence suggests that the antibiotic ointment and ibuprofen was for the issues concerning Milton's chafing skin.

aware of the situation.  In contrast, both Neal and Moore have submitted their own affidavits, each testifying that they were not aware of any problems with Milton's foot or hallux. This conflicting testimony at the least creates a genuine issue of material fact as to the known seriousness of Milton's condition.  See Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990) (Finding that a serious medical need existed where inmate suffered broken foot, and inmate notified prison guard that "his foot felt as though it was broken.").

## II.     Deliberate Indifference - Interference With Medical Treatment

Milton's first claim is premised on a theory of interference with medical treatment. To establish that Moore or Neal were deliberately indifferent to Milton's serious medical need based on a theory of interference with medical treatment, Milton must establish that Moore and/or Neal (1) had a "subjective knowledge of a risk of serious harm, (2) disregard[ed] that risk, and (3) [engaged in] conduct that is more than mere negligence."  Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).  Milton has established – or at least created a genuine issue of disputed material fact – as to the first element.  Milton has failed, however, to establish the other two elements.

There is a complete lack of evidence that after February 22, 2007, the date Milton's infection was diagnosed, either Neal or Moore interfered with any treatment. And prior to February 22, 2007, the only treatment Milton claims that Moore and Neal interfered with was the denial of work boots.  And while Milton contends that a nurse

instructed him to obtain work boots, he has not presented any evidence that any medical provider prescribed work boots as treatment for his foot.  See Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291 (deliberate indifference can be manifested by prison guards "intentionally interfering with the treatment once prescribed.").  Notably, the medical records from Milton's February 13, 2007 sick call visit do not mention work boots at all, or any other treatment for his foot aside from the antifungal powder.  The records also clearly state that there was no sign or symptom of infection at that time; therefore it is arguable that as of February 13, 2007, Milton was not yet suffering from a serious medical condition which would require any treatment.  And while outside the relevant time frame, there is no evidence that even after Milton's infected hallux was diagnosed, any medical personnel ever prescribed work boots, or that Milton was ever assigned work boots to wear while working on the mower squad.  In other words, Milton has failed to establish that, prior to February 22, 2007, there was any medical treatment that either Moore or Neal interfered with.  An inmate asking to wear a specific type of shoe does not equate to medical treatment.

Milton also has failed to put forth any evidence of a causal connection between any purported refusal to provide work boots and his injury.  Simply put, there is nothing in the record even suggesting that wearing leather work boots, instead of soft cloth covered shoes, would be proper treatment for a sore or infected toe.  Nor is there any

evidence that the denial of work boots actually worsened Milton's injury.[6]   Further

damaging Milton's claim is the fact that both Moore and Neal have testified in their

affidavits that they did not have the authority to issue work boots to any inmate.

Although Milton claims that Moore and/or Neal could have walked him over to the

laundry room and asked for work boots, the fact remains that neither Defendant had

the authority to provide work boots to an inmate.[7]   Lastly, both Moore and Neal have

submitted undisputed evidence that work boots were not required to operate a mower;

closed toed shoes of the kind Milton wore were sufficient.

Because Milton has failed to provide any record evidence creating a disputed

issue of material fact with respect to the interference with any medical treatment, the

Court finds that Milton cannot establish a claim for deliberate indifference based on the

interference with medical care.   Summary judgment shall be granted in favor of both

Defendants as to this claim.

## III.   Deliberate Indifference - Delay in Treatment

Milton's second and final claim for relief is asserted against Neal, and is based

on the theory that Neal delayed Milton's treatment.   In assessing a claim of deliberate

indifference based on delayed treatment, the Court considers factors such as "(1) the

---

[6]In other words, there is no testimony or evidence that not wearing work boots caused the infection of Milton's hallux or worsened it.

[7]The regulations for prescribing specialized footware to inmates are detailed and complex, and require written prescriptions from medical personnel.   See Thompson v. Windsor, 2010 WL 5137421 (N.D. Fla. Dec. 9, 2010).

seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert v. Lee Cnty., 510 F.3d 1312, 1327 (11th Cir. 2007).  However, an "inadvertent failure to provide adequate medical care" does not give rise to an Eighth Amendment claim.  Estelle, 429 U.S. at 105–06, 97 S. Ct. at 292.

This claim focuses on Milton's February 20, 2007 complaints to Neal about his foot.  Milton has testified via affidavit that he could not keep up with his work during his shift on the mower squad due to the pain he was suffering, that he was limping, and he even asked to declare a medical emergency.  However, Neal ignored these complaints, refused to allow Milton to go to the medical department, and instead directed Milton to continue working for another 20-30 minutes.  Although Neal claims that he has no recollection of these events, or of supervising Milton at all, Milton has presented sufficient evidence, including various affidavits, to create a genuine issue of material fact as to both the seriousness of the need, and whether Neal delayed treatment, even if only for a brief period of time.  See Hughes, 894 F.2d at 1588 (delay of a few hours in providing care for a painful broken foot is sufficient to state a constitutional claim); Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11th Cir. 1985) (delay of two and one-half hours in treating bleeding one and one-half inch cut above the eye could constitute deliberate indifference).  Milton has also presented evidence that his hallux was indeed infected, and, particularly in light of the fact that he suffers from diabetes, it is

reasonable to assume, taking the facts in the light most favorable to Milton, that his infection may have worsened when Neal delayed his ability to seek medical treatment.

## IV.    Qualified Immunity

Having found that material issues of fact exist with respect to the delayed treatment claim against Neal, the Court must consider whether Neal is still entitled to summary judgment on the basis of qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002)).  Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial.  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985).

To receive qualified immunity, a government official must first prove that he was acting within his discretionary authority.  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).  Once the defendant establishes this, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  Id.  The Supreme Court has established a two-part test to determine whether qualified immunity should apply.  The court must determine whether the plaintiff's allegations, if true, establish a constitutional

violation. Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2514 (2002). This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. Gonzalez, 325 F.3d at 1234. The second prong of the test requires the court to determine whether the right was "clearly established" at the time of the violation. Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). Following the Supreme Court's clarification in Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009), these two determinations may be made in either order at the discretion of the court. Lewis, 561 F.3d at 1291.

There is no dispute that Neal was acting within his discretionary authority at all relevant times. And the Court's determination that material issues of fact exist as to whether Neal delayed treatment of Milton's infected hallux also applies to the first prong of the qualified immunity test. The Court will therefore focus on the second prong - whether the law was clearly established as of February 20, 2007.

"For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about) the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 (11th Cir. 1997) (quoting Lassiter v. Alabama A & M Univ., 28 F.3d 1146,

1150 (11th Cir. 1994) (en banc)).  To prove that the law was "clearly established," a plaintiff may point to either

> (1) earlier case law from the Supreme Court, [the Eleventh Circuit], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct.

Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) (citing Marsh v. Butler Cnty., 268 F.3d 1014, 1031-33 (11th Cir. 2001) (en banc)).  "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law."  Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011).

Milton has not cited, and the Court has been unable to locate, a single Supreme Court, Eleventh Circuit Court of Appeals, or Supreme Court of Florida decision in existence as of February 20, 2007 holding that an infected hallux or infected foot constituted a serious medical condition for which a short delay in treatment would be unconstitutional.  The closest analogy the Court can find is a single Eleventh Circuit decision holding that a clearly broken foot which was swelling rapidly constituted a serious and painful medical condition.  See Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990).  However a broken foot is a far cry from a complaint of a sore and possibly infected hallux.  The Court cannot say that Brown truly compelled "the conclusion for all reasonable, similarly situated public officials that what [Neal was] doing violated

-17-

[Milton's] federal rights in the circumstances." <u>Gilmore v. Hodges</u>, 738 F.3d 266, 278 (11th Cir. 2013) (citations omitted).[8] "[O]fficials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." <u>Coffin</u>, 642 F.3d at 1015 (quoting <u>Adams v. St. Lucie Cnty. Sheriff's Dep't.</u>, 962 F.2d 1563, 1575 (11th Cir. 1992)).  For the purposes of qualified immunity, it would not have been obvious to a reasonable officer that prior binding case law inevitably compelled a finding that Neal's actions were unconstitutional.

The only decision similar to the present case is the Court of Appeals unpublished decision in this case (Doc. 88).  However, the Court of Appeals decision cannot be considered clearly established law for two important reasons.  First, it is an unpublished decision, issued in 2011, four years after the events in question, and therefore could not have put Neal on notice that his actions in 2007 were unconstitutional.  <u>See</u> <u>Gilmore</u>, 738 F.3d at 279 ("[O]nly binding precedent can clearly establish a right for qualified immunity purposes.").  Second, the Court of Appeals' decision is limited to a discussion of whether Milton alleged a plausible claim for relief that could survive a motion to dismiss; it does not discuss or mention qualified immunity.  <u>See Reichle v.</u>

_____

[8]In <u>Gilmore</u>, a pretrial detainee filed a § 1983 claim against prison officials, alleging that the denial of batteries for his hearing aids constituted deliberate indifference to his serious medical needs.  The Eleventh Circuit discussed prior appellate decisions which recognized that the unavailability of eyeglasses, prosthetic devices, and dentures equated to the unconstitutional deprivation of adequate medical care, and held that these decisions did not sufficiently place reasonable officers on notice that the denial of hearing aid batteries to inmates with hearing loss would also equate to an Eighth Amendment violation.  As such, the Eleventh Circuit held that the law was not clearly established at the time the officers failed to provide the hearing aid batteries, and qualified immunity shielded the officers from liability.  <u>See</u> 738 F.3d at

Howards, — U.S. —, 132 S. Ct. 2088, 2093 (2012) ("To be clearly established . . . 'existing precedent must have placed the statutory or constitutional question beyond debate.'") (quoting Ashcroft v. al-Kidd, — U.S. —, 131 S. Ct. 2074, 2083 (2011)). Thus, there was no factually similar caselaw that would have put Neal on notice that his conduct violated the Constitution.

Moreover, while there was caselaw establishing the general legal principle that a government official who intentionally delays providing medical care to an inmate, knowing that the inmate had a serious medical condition that could be exacerbated by the delay, acts with deliberate indifference, the Court cannot say that this general rule applied "with obvious clarity to the specific conduct in question." Andujar v. Rodriguez, 486 F.3d 1199, 1205 (11th Cir. 2007) (citing United States v. Lanier, 520 U.S. 259, 271, 117 S. Ct. 1219, 1227 (1997)). See also Bozeman v. Orum, 422 F.3d 1265, 1274 (11th Cir. 2005) (noting that because "cases are highly fact-specific," this general legal proposition "ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment for a serious injury.").   In this case, Milton was able to finish his shift, and he did not seek medical attention for his hallux until nearly 48 hours later (despite going to the medical ward at least twice during this 48 hour period to receive his insulin shots).  Nor is this a case where the officers' conduct "so obviously violates the constitution that prior case law is unnecessary." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).

"Questions of deliberate indifference to medical needs based on claims of delay are complicated questions because the answer is tied to the combination of many facts; a change in even one fact from a precedent may be significant enough to make it debatable among objectively reasonable officers where the precedent might not control in the circumstances later facing an officer." <u>Pourmoghani-Esfahani v. Gee</u>, 625 F.3d 1313, 1318 (11th Cir. 2010). "Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution." <u>Bozeman</u>, 422 F.3d at 1274. This is such a case.

In sum, the law was not clearly established in February 2007 that Neal's short delay in allowing Milton to go to the medical facility to obtain treatment for his infected hallux violated Milton's Eighth Amendment rights. As such, even assuming that Neal's conduct was constitutionally impermissible, he is shielded from civil liability under the second step of the qualified immunity analysis. Summary judgment shall be granted in Neal's favor as to the delay in treatment claim.[9]

### Conclusion

Assuming that Milton's infected hallux constituted a serious medical condition, the undisputed material facts show that neither Moore nor Neal interfered with any

---

[9]This same analysis would also shield Milton and Neal from liability in the interference with treatment claim. Even if the Court were to find that a constitutional violation occurred when Milton did not receive work boots, there is no factually similar Supreme Court, Eleventh Circuit, or Florida Supreme Court decision authority which would have put Milton and Neal on notice in February 2007 that their actions violated Milton's constitutional rights.

prescribed medical treatment.  And assuming that Neal did delay Milton's ability to seek medical care on February 20, 2007, the law was not clearly established at that time such that Neal would have been on notice that his actions violated Milton's Eighth Amendment Rights.  Qualified immunity therefore applies to shield Neal from any liability for Milton's delayed treatment claim.

Accordingly, upon due consideration, the Defendants Moore's and Neal's Motion for Summary Judgment (Doc. 105) is GRANTED.  The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff as to all claims.  The Clerk is further directed to terminate all other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 21st day of May, 2014.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy